## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **TOUCHSTREAM TECHNOLOGIES, INC.,** | |
| *Plaintiff,* | Case No. _____ |
| v. | **JURY TRIAL DEMANDED** |
| **HISENSE CO. LTD., HISENSE VISUAL TECHNOLOGY CO. LTD. F/K/A QINGDAO HISENSE ELECTRONICS CO. LTD., HISENSE INTERNATIONAL CO., LTD., HISENSE INTERNATIONAL (HONG KONG) AMERICA INVESTMENTS CO. LTD., HISENSE IMPORT & EXPORT CO. LTD., HISENSE INTERNATIONAL (HK) CO., LTD., QINGDAO HISENSE MEDIA NETWORKS LTD., HISENSE ELECTRONICA MEXICO S.A. de C.V., and VIDAA INTERNATIONAL HOLDINGS B.V.,** | |
| *Defendants.* | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Touchstream Technologies, Inc. ("Touchstream" or "Plaintiff"), hereby files this Complaint for Patent Infringement against Hisense Co. Ltd., et al. (collectively, "Defendants" or "Hisense") and alleges, upon information and belief, as follows:

## **THE PARTIES**

1.      Plaintiff Touchstream Technologies, Inc., d/b/a Shodogg is a Delaware corporation with its principal place of business in South Dakota.

2.      Upon information and belief, Defendant Hisense Company Ltd. ("Hisense Co.") is a corporation duly organized and existing under the laws of the People's Republic of China. It has a place of business at Hisense Tower No. 17, Donghaixi Road, Qingdao, Shandong Province, 266071, People's Republic of China. Hisense Co. is a leading manufacturer and seller of displays and televisions in the world and in the United States. Upon information and belief, Hisense Co. conducts business in Texas and in the Eastern District of Texas, directly or through its agents. Hisense Co. may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701 as its registered agent because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

3.      Upon information and belief, Defendant Hisense Visual Technology Co. Ltd. f/k/a Qingdao Hisense Electronic Co. Ltd. ("Hisense Visual") is a corporation duly organized and existing under the laws of the People's Republic of China. It has a place of business at 218 Sinanan Road, Qingdao Economic & Technological Development Zone, Qingdao, Shandong Province, 266555, People's Republic of China. Hisense Visual is a leading manufacturer and seller of displays and televisions in the world and in the United States. Upon information and belief, Hisense Visual conducts business in Texas and in the Eastern District of Texas, directly or through

its agents. Hisense Visual may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701 as its registered agent because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

4.      Upon information and belief, Defendant Hisense International Co. Ltd. ("Hisense Int'l") is a corporation organized and existing under the laws of People's Republic of China with its principal place of business located at Hisense Tower No. 17, Floor 22, Donghaixi Road, Qingdao, Shandong Province, 266071, People's Republic of China. Hisense Int'l is a leading manufacturer and seller of displays and televisions in the world and in the United States. Upon information and belief, Hisense Int'l conducts business in Texas and in the Eastern District of Texas, directly or through its agents. Hisense Int'l may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701 as its registered agent because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

5.      Upon information and belief, Defendant Hisense International (Hong Kong) America Investments Co. Ltd. ("Hisense HK") is a corporation organized and existing under the laws of Hong Kong SAR, China, with its principal place of business located at Room 3101-3105, Senga Commercial Centre, No. 148, Connaught Road West, Hong Kong SAR, China. Hisense HK is a leading importer of displays and televisions in the world and in the United States. Upon information and belief, Hisense HK conducts business in Texas and in the Eastern District of Texas, directly or through its agents. Hisense HK may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701 as its registered agent because it

engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

6.     Upon information and belief, Defendant Hisense International (HK) Co. Ltd. ("Hisense Int'l (HK)"), is a corporation organized and existing under the laws of Hong Kong SAR, China, with its principal place of business located at Room 3101-3105, Sanga Commercial Centre, No. 148, Connaught Road West, Hong Kong SAR, China. Hisense Int'l (HK) is a leading importer of displays and televisions in the world and in the United States. Upon information and belief, Hisense Int'l (HK) conducts business in Texas and in the Eastern District of Texas, directly or through its agents. Hisense Int'l (HK) may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701 as its registered agent because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

7.     Upon information and belief, Defendant Qingdao Hisense Media Networks Ltd. ("Hisense Media"), is a corporation organized and existing under the laws of the People's Republic of China with its principal place of business located at No. 399, Songling Road, Laoshan District, Qingdao, Shandong, People's Republic of China. Hisense Media is a leading importer of displays and televisions in the world and in the United States. Upon information and belief, Hisense Media conducts business in Texas and in the Eastern District of Texas, directly or through its agents. Hisense Media may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701 as its registered agent because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

8.      Upon information and belief, Defendant Hisense Electronica Mexico S.A. de C.V. ("Hisense Mexico") is a corporation organized and existing under the laws of Mexico, with its a place of business at Blvd. Hisense (Sharp), 3510 Parque Industrial Rosarito Playas de Rosarito, B.C., C.P, 22710, Mexico. Hisense Mexico is a subsidiary of Hisense USA Corporation ("Hisense USA"), and Defendant Hisense Visual owns ten percent or more of its stock. Hisense Mexico may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701 as its registered agent because it engages in business in Texas but has not designated or maintained resident agent for service of process in Texas as required by statute. This action arises out of that business.

9.      Upon information and belief, Defendant VIDAA International Holdings B.V. ("VIDAA Int'l"), is a corporation organized and existing under the laws of the Netherlands, with its principal place of business located at Strawinskylaan 3051, Atrium Building, 4th Floor, 1077ZX Amsterdam, Netherlands. VIDAA Int'l was founded by Hisense[1] and is a leading importer of displays and televisions in the world and in the United States. Upon information and belief, VIDAA Int'l conducts business in Texas and in the Eastern District of Texas, directly or through its agents. VIDAA Int'l may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701 as its registered agent because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

---

[1] *See* About, VIDAA, https://www.vidaa.com/about/ (last visited July 24, 2025) ("Founded in March 2019 by the Hisense Group . . ., VIDAA is a market-leading Smart TV OS and Content Platform . . . .").

10.     Upon information and belief, the Defendants identified in paragraphs 2-9 (collectively, "Hisense" or "Defendants") are an interrelated group of companies, which together comprise one of the world's largest manufacturers and sellers of televisions in the United States.

11.     Upon information and belief, the Defendants named above and their affiliates share the same office address, executives, management, common ownership, advertising platforms, facilities, distribution chains and platforms and the same Accused Functionalities and related technologies. Upon information and belief, Hisense operates as a unitary business venture to offer the Accused Services in the United States, including in Texas and this District. Accordingly, the Defendants are jointly and severally liable for the acts of patent infringement alleged herein, and the actions of each Defendant can be attributed to the other Defendants.

12.     On information and belief, Defendants place or contribute to placing the Accused Functionalities into the stream of commerce via established distribution channels knowing, understanding and/or expecting that such services will be purchased by consumers and used in the United States, including in the State of Texas and this District. Accordingly, Defendants' contacts with the State of Texas and this District are purposeful and they have notice that their activities may subject them to litigation here.

## NATURE OF THE ACTION

13.     This is a civil action against Hisense for patent infringement arising under the patent statutes of the United States, 35 U.S.C. § 271 *et seq.* for the infringement of United States Patent Nos. 11,468,118 (the "'118 Patent"), No. 11,860,938 (the "'938 Patent"), and No. 11,086,934 (the "'934 Patent") (collectively, "the Touchstream Patents").  True and correct copies of the '118 Patent, the '938 Patent, and the '934 Patent are attached as Exhibits A, B, and C, respectively, to this Complaint.

## JURISDICTION AND VENUE

14.     This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 1367.

15.     This Court has specific and personal jurisdiction over Hisense in this action pursuant to due process and/or the Texas Long Arm Statute because Hisense, directly and/or through agents, subsidiaries, and/or intermediaries, has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Hisense would not offend traditional notions of fair play and substantial justice.  Hisense has engaged in continuous, systematic, and substantial activities within this State, including substantial marketing and sales of services—including the VIDAA and RemoteNOW services that are used by Hisense in connection with performing the Accused Functionalities—within this State. Furthermore, Hisense—directly and/or through agents, subsidiaries, and/or intermediaries—has committed and continues to commit acts of infringement in this District by, among other things, offering, performing, and using the VIDAA and RemoteNOW services. Hisense also has derived substantial revenues from infringing acts in this District, including from the performance and use of the infringing VIDAA and RemoteNOW services in this District, as well as the import, sale, and offer for sale of Hisense compatible products, including through authorized dealers located in this District. In the alternative, this Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(2).

16.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c) because the Defendants are foreign companies that may be sued in any Judicial District, including the Eastern District of Texas. Further, upon information and belief, the Defendants have admitted or not contested proper venue in this Judicial District in other patent infringement actions. *See*

*Lone Star Tech. Innovations, LLC v. Qingdao Hisense Elecs. Co. Ltd.*, No. 6:19-cv-00294-JDK; *Maxell, Ltd. v. Hisense Co., Ltd. et al.*, No. 5-19-cv-00156; *Sovereign Peak Ventures, LLC v. Hisense Co., Ltd.*, No. 2-21-cv-00209; *Sovereign Peak Ventures, LLC v. Hisense Co., Ltd.*, No. 2-21-cv-00210; *Vista Peak Ventures, LLC v. Xianyang Caihong Optoelectronics Technology Co., Ltd. et al.*, No. 2-21-cv-00260; *Vista Peak Ventures, LLC v. Hisense Co. Ltd. et al.*, No. 2-21-cv-00263; *Freedom Patents LLC v. Hisense Company Ltd., et al.*, No. 4-23-cv-00419.

17.    Venue is also proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).  Hisense, directly and/or through agents, subsidiaries, and/or intermediaries, maintains a permanent physical presence within the Eastern District of Texas, conducting business from numerous locations. For example, as shown in Exhibit D,[2] Hisense lists on its website that its products are available at retail stores in Beaumont, Tyler, Texarkana, Marshall, and Longview as authorized dealers for Hisense products. Hisense also has committed acts of infringement in this District, directly and/or through agents, subsidiaries, and/or intermediaries, as described above.

18.    Upon information and belief, personal jurisdiction also exists specifically over each of the Defendants because they have overlapping executives, interlocking corporate structures and close relationships as developer, offeror, and user of the Accused Functionalities. In addition, on information and belief, Defendants have purposefully directed activities at citizens of the State of Texas and located within this District. On information and belief, Defendants have purposefully and voluntarily placed Accused Functionalities into the stream of commerce through established distribution channels with the expectation, knowledge, and intent that they will be downloaded and used by customers located throughout the United States, including in Texas and in this District.

---

[2] Printouts from the Hisense Webpage Displaying Tyler and Longview as Locations with Authorized Retailers for Hisense Products. Hisense 55" Class A6 Series UHD Vidaa TV, HISENSE, https://www.hisense-usa.com/televisions/55-a6-series-uhd-hisense-vidaa-tv (last visited July 24, 2025).

For example, the Apple App Store page for the Hisense RemoteNOW mobile application, when visited from the United States, lists the "Seller" as Defendant Hisense Media ("Qingdao Hisense Media Networks LTD"), rather than any United States entity.[3] The Apple App Store page for Hisense RemoteNow also links to a privacy policy for the Hisense RemoteNOW mobile application that describes how "Hisense International Co., Ltd. (with its official address at No.17, Donghai Xi Road, Qingdao, P.R.C.) and its affiliates (collectively called "Hisense," "we" or "us" or "our") collects, uses, maintains and discloses information collected from you of this website ("Website")."[4] The Hisense privacy policy site further directs anyone with questions or comments about the privacy policy to http://global.hisense.com/support/contact-us. This website includes contact information for such privacy inquiries to the following address: Hisense International, Floor 22, Hisense Tower, 17 Donghai Xi Road, Qingdao, 266071, China.[5]

19.    Hisense's global website explained in October 2024 that it had "overseas business revenue surpassing $12.2 billion USD in the fiscal year of 2023."[6]

20.    Upon information and belief, Defendant VIDAA Int'l operates and/or maintains a global website accessible from the United States, including on information and belief from this District, that includes global instructional videos for the VIDAA app, evidencing no variation by

---

[3]        RemoteNOW,        APPLE        APP        STORE        PREVIEW, https://apps.apple.com/us/app/remotenow/id1301866548 (last visited July 24, 2025).

[4] *See* Privacy Policy, HISENSE, https://global.hisense.com/privacy-policy (last visited July 24, 2025) (provided by hyperlink from the Hisense RemoteNOW app on the Apple App Store website).

[5] *See* Contact Us, HISENSE, https://global.hisense.com/support/contact-us (last visited July 24, 2025).

[6] "Hisense's Overseas Annual Revenue Surpasses $12.2 Billion USD," HISENSE (Oct. 22, 2024), https://global.hisense.com/about-hisense/newsroom/hisenses-overseas-annual-revenue-surpasses-12-billion-usd.

country (including the United States), and further evidencing the "casting feature" of the VIDAA app.[7]

21.    Upon information and belief, the referenced manufacturing, distribution, selling, and importation into the United States of many or all of the infringing services and/or products compatible with the infringing services is performed by the Hisense Defendants with full knowledge that the infringing services and/or products compatible with the infringing services are destined for sale in the United States, including sales in the State of Texas and this District. Hisense has authorized retailers throughout the United States, including in Texas and this District.

22.    On information and belief, the Hisense Defendants have derived substantial revenue from infringing acts in this District, including from the sale and use of products used in the accused infringement.

23.    Upon information and belief, the Defendants direct and/or control the actions of its subsidiaries, including its U.S.-based subsidiaries such as Hisense USA. The Hisense USA website includes a "User Manual" for its televisions.[8] This User Manual claims a copyright to Defendant Hisense Co., and indicates that "Hisense product names, logo's [*sic*], slogans or marks are registered trademarks of Hisense Company Ltd. [(Defendant Hisense Co.)] and its subsidiaries."[9] The User Manual also evidences that it is the same manual used by Hisense USA, Hisense Canada Co., Ltd., and Hisense Mexico S. de R.L. de C.V.[10]

---

[7] *See* Customer support, VIDAA, https://www.vidaa.com/support/ (last visited July 24, 2025); *see also* "How to switch inputs – VIDAA," VIDAA, https://www.vidaa.com/support/#uael-video-gallery-fb2aebe-1 (last visited July 24, 2025).

[8]    *See* "User Manual," HISENSE, https://assets.hisense-usa.com/assets/ProductDownloads/427/79afa2684c/50U6H-User-manual.pdf (last visited July 24, 2025).

[9] *Id.* at 3.

[10] *See id.*

24.     Upon information and belief, the Defendants and their U.S.-based subsidiaries, including but not limited to Hisense USA, share at least some of the same corporate officers. For example, David Gold is Vice President at Hisense Int'l and President of Hisense USA.[11]

25.     As explained below, this Court is familiar with Touchstream's technology and patents due to ongoing litigation in this District between Touchstream and various media companies.

## TOUCHSTREAM'S PATENTS

26.     In 2010, David Strober, the inventor of the Touchstream Patents and the original founder of Touchstream, was working at Westchester Community College as a Program Manager and e-learning instructional designer.  At this job Mr. Strober facilitated the development of online college courses, developing software as needed to support those efforts.

27.     At least as early as mid-2010, Mr. Strober perceived the need to be able to take content that could be viewed on a smaller device, like a smartphone, and "move" it to another device, like a computer monitor or television.  In working to bring his idea to fruition, Mr. Strober expanded his work by using a device like a smartphone to cause content to play on a second screen, even if that content resided elsewhere (like the public internet). Near the end of 2010, Mr. Strober had developed a working prototype that demonstrated his groundbreaking concept. Recognizing that that his invention could revolutionize how people located, viewed, and shared media, Mr. Strober filed his first patent application in April 2011.

---

[11] *See* "Hisense and FIFA Offer First Look for Fans at FIFA Club World Cup 2025 Trophy at CES 2025," HISENSE (Jan. 7, 2025), https://global.hisense.com/about-hisense/newsroom/hisense-and-fifa-offer-first-look-for-fans-at-fifa-club-world-cup-2025-trophy-at-ces-2025 (photo caption identifying Mr. Gold as "David Gold, Vice President of Hisense International and President of Hisense Americas").

28.    The Touchstream Patents are not directed to an abstract idea, but are limited to a specific, concrete messaging architecture. The claims require various components to send or receive signals (or messages) to control the playback of content from various media players over a network, with precise requirements varying by claim. They do not cover all forms of remote control of content over a network. Certain steps of certain claims must also be performed in their specified order. Steps of the '118 Patent claims include, *inter alia*:

- Receiving a unique identifier of a content presentation system by a personal computing device;

- Generating a set of messages including a command in a first format, a reference to a piece of content associated with a particular media playing application, an identifier that corresponds to the particular media playing application, and the unique identifier;

- Communicating, by the personal computing device, the generated set of messages to a server system configured to send, to the content presentation device based on the unique identifier, a second command in a second format, the second command being converted from the set of messages based on each of the first command and a configuration of the particular media playing application, wherein the second format is associated with the particular media playing application and the second command corresponds to the first command; and

- Causing, by the personal computing device, the content presentation system to utilize the second command and the particular media playing application to control the referenced piece of content.

COMPLAINT FOR PATENT INFRINGEMENT                                      Page 11

29.     The '938 Patent recites steps performed by elements including, *e.g.*, a video content provider and a video content provider server system.  Steps of the '938 Patent include, *inter alia*:

- Receiving, from a computing device having a first media player of a video content provider, a request for metadata relating to video content provided by the video content provider, the request including one or more parameters comprising at least one of: an account or a user identification;

- Identifying, based on the request, video content metadata satisfying the parameters;

- Providing, to the computing device, the video content metadata satisfying the one or more parameters;

- Receiving a video content selection and a video display selection indicative of a selected remote display, wherein a second media player is not loaded onto the selected remote display prior to the video content selection or the video display selection being received;

- Generating, based on the video display selection and the second media player not being loaded onto the selected remote display, video display selection, a first command causing the selected remote display to load the second media player;

- Generating, based on the video content selection, a second command causing the second media player to present the selected video content on the selected remote display under control of the computing device; and

- Transmitting the first command to cause the selected remote display to load the second media player and the second command to cause the loaded second media player to present the selected video content on the selected remote display under the control of the computing device, wherein subsequent to the second media player

COMPLAINT FOR PATENT INFRINGEMENT                                          Page 12

being loaded onto the selected remote display, control commands from the computing device are communicated to the selected remote display device by way of a video content provider server system.

30.    The '934 Patent recites steps performed by elements including, e.g., a media receiver in communication with a server system and a computing device. Steps of the '934 Patent include, *inter alia*:

- Providing a unique identifier of a media receiver to a computing device in communication with a server system;

- Receiving a set of messages from the computing device referencing a piece of content associated with a first type of media playing application and including a set of commands converted from a universal format to a first format corresponding to the media playing application type;

- Selecting the first type of media playing application based at least in part on its association with the piece of content referenced in the received set of messages; and

- Controlling how the selected first type of media playing application plays the referenced piece of content based on at least one command of the converted set of commands included in the received set of messages.

31.    Further, Mr. Strober's improvements in this area do not reflect routine or conventional steps. The arrangement of components and steps themselves is inventive, enabling, among other things, using different media players, associating different devices with a unique identifier (e.g., an account or a user identification), and coordinating between a computing device

and a video content provider utilizing a plurality of media players, pieces of content, and control commands.

32.     The Touchstream Patents, which are entitled "Play Control of Content on a Display Device" each claim priority to U.S. Provisional Pat. App. No. 61/477,998 (filed on April 21, 2011).

33.     Touchstream is the owner, by assignment, of all rights, title, and interest in the '118 Patent, the '938 Patent, and the '934 Patent.

## TOUCHSTREAM REVOLUTIONIZES CONTENT STREAMING

34.     In 2011, Mr. Strober officially incorporated Touchstream to share his inventions with the world.

35.     In the following years, Touchstream raised millions of dollars in investments.

36.     Since 2011, Touchstream, d/b/a "Shodogg," developed software that enables content to be wirelessly cast (*e.g.*, visited, displayed, and controlled) from a mobile device to a second device (*e.g.*, TV, computer, tablet, etc.). Touchstream has been a leader in developing casting technology and has received numerous awards and recognition.

37.     Unfortunately, the efforts of Touchstream and Touchstream's partners to appropriately monetize Mr. Strober's inventions were significantly hindered by infringement of the Touchstream Patents, including by Hisense. The timing and scope of Hisense's infringement is discussed in more detail below.

## HISENSE'S INFRINGING SERVICES

38.     Hisense unveiled its RemoteNOW mobile applications in or around March 2018[12] and its VIDAA mobile applications in or around March 2021,[13] both of which infringe claims of the Touchstream Patents.[14]

39.     According to the VIDAA Google App Store listing, "The VIDAA Smart Remote App is a convenient and easy way to control any TV in your home which runs the VIDAA Smart TV OS."[15] According to Hisense's website, the RemoteNOW application "allows you to play media content directly from your smartphone to the TV with minimal effort."[16]

40.     The accused VIDAA and RemoteNOW functionalities comprise the methods performed through operation of at least the VIDAA mobile applications and RemoteNOW mobile applications, and associated compatible Hisense television devices ("the Accused Functionalities").[17] The VIDAA and RemoteNOW services provided in the past, and continue to provide, functionality and structure that facilitates the controlling of content, such as video, music, and photo content, on a content presentation system described in further detail below.

---

[12] *Supra*, n.2 (showing version 1.0 was published on March 9, 2018).
[13] *Supra*, n.6 (showing version 1.01.009 was published on March 22, 2021).
[14]         VIDAA,         GOOGLE         PLAY         STORE, https://play.google.com/store/apps/details?id=com.universal.remote.multi&hl=en_US         (last visited July 9, 2025); Google Play Store, WAYBACK MACHINE (Oct. 7, 2020), http://web.archive.org/web/20201007063742/https://play.google.com/store/apps/details? id=com .universal.remote.ms&hl=en_US&gl=US (last visited July 9, 2025).
[15] *Supra*, n.6.
[16] Peter Maricic, "How to use the Hisense RemoteNOW App," HISENSE (July 2, 2020), https://hisense.com.au/blog/how-to-use-the-hisense-remotenow-app/.
[17] *Id.*; *see also supra*, n.2. The associated compatible Hisense television devices include all television devices compatible with the VIDAA mobile and RemoteNOW mobile applications, whether offered under the Hisense brand or a different brand.

COMPLAINT FOR PATENT INFRINGEMENT                                          Page 15



Fig. 1.[18]

41.    VIDAA and RemoteNOW compatible devices support wireless communication protocols including Wi-Fi and Bluetooth as well as wired communication interfaces such as HDMI, ethernet, USB, and RCA.[19] VIDAA and RemoteNOW provide playback of content including from Internet-based video streaming services on individual devices. An example of this is shown below.

---

[18] *Supra*, n.18.
[19] *See, e.g.*, 55" 4K ULED Hisense Android Smart TV, HISENSE (2021), https://www.hisense-usa.com/support/55u7g-55-4k-uled-hisense-android-smart-tv-2021(last visited July 9, 2025).



Fig. 2A.[20]



Fig. 2B.[21]

---

[20] *Supra*, n.6.
[21] *Id.*



Fig. 3 (Exemplary RemoteNOW compatible device).[22]



Fig. 4 (Exemplary VIDAA compatible device).[23]

---

[22] *Supra*, n.21.

[23] 50" Class A6 Series UHD Vidaa TV, HISENSE, https://www.hisense-usa.com/televisions/50-a6-series-uhd-hisense-vidaa-tv (last visited July 9, 2025).

# How can I connect the VIDAA app to my TV?

Take the following steps to connect the VIDAA app to your TV:

- **Step 1**
Make sure your mobile device and TV are connected to the same network.

- **Step 2**
Agree to the VIDAA End User License, Disclaimer, and Privacy Policies on your TV if you haven't already. To do so, go to your TV settings and select Support > Disclaimer and Privacy.

- **Step 3**
Restart the mobile app and select the TV or device you want to connect.

Still experiencing problems? Make sure you have the correct version of the app installed by going to your TV settings, and then selecting Support > Mobile App. Scan the QR code on your TV screen to find and install the correct version of the mobile app.

Fig. 5.[24]



Fig. 6 (Exemplary Device Configuration for a Hisense Device).[25]

---

[24]  How    can    I    connect    the    VIDAA    app    to    my    TV?,    VIDAA, https://www.vidaa.com/customer_support/how-can-i-connect-the-vidaa-app-to-my-tv/    (last visited July 9, 2025).
[25]  Web  App  Technical  Guide,  VIDAA  (June  23,  2020),  https://www.vidaa.com/wp-content/uploads/2020/12/WebApp_Development_Guide_for_VIDAA.pdf.



Fig. 7A.[26]



Fig. 7B.[27]

42.    Hisense VIDAA and RemoteNOW compatible devices are connected to a network

via wireless or wired interfaces such as Wi-Fi or Ethernet are assigned a network identifier such

---

[26] "Hisense VIDAA TV: Remote App for Android & iOS!," YOUTUBE (Feb. 24, 2024), https://www.youtube.com/watch?v=FRdHHWNuuCk.
[27] *Id.*

as an IP address. VIDAA and RemoteNOW compatible devices are additionally associated with device identifiers, including for example, a Device Identifier and/or PIN. Upon initial operation, available VIDAA and RemoteNOW compatible devices are discovered on the network and configured to operate with the mobile applications using the network or device identifier provided.  An example of this is shown below.



Fig. 7C.[28]



Fig. 7D.[29]

---

[28] *Id.*
[29] *Id.*



Fig. 7E.[30]

43.    Upon connecting a compatible device, a user may perform actions on the RemoteNOW and VIDAA mobile applications to control the connected device. For example, a user may browse content from various media sources, and upon finding a piece of content the user wishes to view, the user may select that content and perform actions through the mobile application to cause the desired media to be presented on the connected device. Users may select content such as video, music, or photos. On information and belief, after a user selects a piece of content for playback on the connected device, the RemoteNOW and VIDAA applications send messages to a server system configured to send information to the connected device.

---

[30] *Id.*



Fig. 8A.[31]

RemoteNOW is the must-to-have assistant for your Hisense 4K Vidaa Smart TV and the latest Hisense 4K Smart TV! Here are the major benefits:
- A smart TV remote substitutes your traditional remote control and supports voice command (only available for some models).
- Browse installed TV apps and easily manage them on your phone
- View broadcast TV channels and program information on your phone
- Show photos and videos from your phone on Hisense TV with simple taps

Fig. 8B.[32]

Supported models:
- 43", 49", 50", 55", 65" H6E Series
- 43", 55", 65" H60x0E Series
- 43", 50", 55", 65", 75" H8E Series (supports voice service)
- 43", 50", 55", 65", 75" H80x0E Series (supports voice service)
- 55", 65" H9E Series (supports voice service)
- 55", 65" H90x0E Series (supports voice service)
-32", 40", 43" V5G Series(supports voice service)
-50", 55" V6G Series (supports voice service)
-50", 55", 65", 75" H8G Series
-65", 75" H9G Series

Fig. 8C.[33]

---

[31] *Supra*, n.2.
[32] *Id.*
[33] *Id.*



Fig. 9A.[34]

Cannot find your TV Remote? The VIDAA Smart Remote App is a convenient and easy way to control any TV in your home which runs the VIDAA Smart TV OS.

It provides all of the functions of your TV remote and more.
Key Features:
- Power On / Off
- Volume Control
- Change Channel
- Share Video / Music / Photo to TV
- Search VoD

The compatibility may vary depending on your TV model number.

Fig. 9B.[35]

---

[34] *Supra*, n.6.
[35] *Id.*

Fig. 10A.[36]

These days, smartphones are like extra limbs that we employ to carry out all manner of tasks, from taking pictures to booking holidays. With Hisense's RemoteNOW app, your smartphone becomes an extension of your Hisense TV, functioning as an extra remote control, for the ultimate convenience and connectivity (You can view if your model is compatible with the RemoteNOW App at the bottom of the page).

**Works just like a remote control**
RemoteNOW works like a virtual remote control and can be used in place of your traditional remote, enabling you to do everything from changing channels to adjusting TV settings and much more.

Fig. 10B.[37]

## Compile a list of all your favourite content

Think of RemoteNOW as an extension of your TV that enables you to amalgamate all your favourite content in one place. If you're watching a show that's got you hooked, simply open the app and add it to your favourites. This piece of smart tech will also learn what you like to watch and suggest similar content. There's also the big players like Netflix, YouTube, Stan, Amazon Prime Video, and Freeview Plus available, ready to browse through and enjoy.

Fig. 10C.[38]

---

[36] *Supra*, n.18.
[37] *Id.*
[38] *Id.*

44.    On information and belief, Hisense maintains session information establishing associations between devices participating in VIDAA and RemoteNOW networks including, *e.g.*, a mobile device, an instance of the VIDAA and RemoteNOW controller applications, the HTTP server component of compatible Hisense devices, and HTTP messages including the IP address or device identifier of compatible Hisense devices or instances of applications, including but not limited to browsers configured for media playback.

45.    On information and belief, compatible Hisense devices receive via a server system (e.g., HTTP server) a set of messages from the RemoteNOW and VIDAA applications including a reference to a piece of content (e.g., a URL or content identifier) associated with a first type of media playing application (e.g., Netflix, YouTube, Prime Video, etc.) as well as commands converted from a universal format (e.g., "play") defined by the RemoteNOW and VIDAA controller applications to a first format (e.g., programming code) that corresponds to the first type of media playing application. In response to the received set of messages, on information and belief, the compatible Hisense device selects the first type of media playing application based at least in part on its association with the referenced piece of content and controls how the selected type of media playing application plays the referenced piece of content based on at least one command of the converted set of commands included in the received set of messages.[39]

---

[39]    "WebApp    Development    Technical    Guide,"    VIDAA,    at    4, https://web.archive.org/web/20230824141926/https://www.vidaa.com/wp-content/uploads/2020/12/WebApp_Development_Guide_for_VIDAA.pdf (last visited July 9, 2025).

## 1.2    Architecture Overview

The following figure illustrates the architecture of VIDAA Platform. VIDAA platform is a Linux based system that is divided into several architectural layers. The supporting layers include the operating system (OS), driver and middleware layers. The upper layer consists of the application and application framework layer. This document will discuss the upper layers in further detail.

VIDAA platform provides rich media playback functionalities including play, pause, stop and scaling. Various streaming protocols including HTTP\HLS\DASH\MSS are supported by the media player plugin module. It also has a DRM manager to manage digital rights and a streaming manager to control the stream.



Fig. 11.[40]

46.    On further information and belief, playback of content from Internet-based streaming media services involves browser components executing on Hisense compatible devices such that media players for specified content may be retrieved and loaded using an instance of a browser.

[40] *Id.*

## 3 Web Engine

A web app on the VIDAA platform runs within a browser engine based on Chromium. Almost all Chromium features and Chromium supported web standards are available to app developers. The developer should keep in mind, a TV will have limitations, normally without a keyboard, mouse and/or touch screen support. TVs also tend to have a slower CPU and less memory (RAM) compared to a typical PC, tablet or handset.

The following table shows web engine versions depending on VIDAA chipset versions:

| SoC version | Region | Release Year | Web Engine |
|---|---|---|---|
| MT5655/5657 | ALL | 2015~2016 | Opera core(Presto 2.12) |
| MT5658 | ALL | 2016-2017 | Opera core(OMI/4.9 Martell-2.312 Chromium 53) |
| MT5659 | ALL | 2017-2018 | Opera core(OMI/4.11 Martell-3.103 Chromium 53) |
| MSD6586 | ALL | 2017-2018 | Opera core(OMI/4.9 Martell-2.312 Chromium 53) |
| MSD6886 | AU | 2019-2020 | Odin core(Chromium 57) |
| MSD6886 | EU | 2019 | Sraf core  (Chromium 47) |
| MSD6886 | EU | 2020 | Opera core(OMI/4.20 Chromium 77) |
| MT9602 | ALL | 2020 | Opera core(OMI/4.20 Chromium 77) |

Fig. 12.[41]

47.     Through the processing of messaging sent by the VIDAA and RemoteNOW applications running on the mobile device—as described at ¶¶ 38-46, *supra*—the VIDAA and RemoteNOW systems allow the user to consume media content on a VIDAA- or RemoteNOW-compatible remote device separate from the user's mobile device, where the media content and/or media player may be downloaded or streamed from the network rather than from the mobile device itself.  The user is therefore free to use his or her mobile device for other purposes during playback of the media on the remote device.

48.     Upon information and belief, each of the steps discussed above is either performed by or otherwise attributable to Hisense.  To the extent another actor performs any of these steps, Hisense directs or controls that performance, conditioning participation in the activity or the

---

[41] *Id*. at 8.

receipt of a benefit upon performance of the patented method steps and establishing the manner or timing of that performance. Additionally, on information and belief, Hisense profits from its infringement and has the right and ability to stop or limit the infringement. For instance, Hisense tests and demonstrates the Accused Functionalities, including in advertisements. Further, Hisense advertises and demonstrates to customers that the infringing method steps will be performed, as shown above. Hisense also causes automatic updates to the VIDAA and RemoteNOW systems. As discussed below, the functionality advertised and directed by Hisense infringes the Touchstream Patents, and on information or belief, is known by Hisense to do so.

49.    Hisense's revenue accelerated rapidly after it began infringing Touchstream's technology with its RemoteNOW mobile applications in 2018, and Hisense doubled down on its infringement by introducing its infringing VIDAA mobile applications in 2021. For instance, between 2012 and 2017, Defendant Hisense Visual's reported revenue stalled between $4 and $5 billion, but its reported revenue in the years after that is as follows:[42]

$5.25 billion in 2018;

$4.92 billion in 2019;

$5.75 billion in 2020;

$7.24 billion in 2021;

$6.74 billion in 2022; and

$7.55 billion in 2023.

50.    Hisense's use of Touchsteam's technology goes beyond stimulating sales of devices—Hisense's use also stimulates advertising and other partnership revenue. For instance, Defendant VIDAA Int'l's global website explains: "Leveraging its global reach, VIDAA assists

---

[42]    Revenue    for    Hisense    Visual    Technology    (600060.SS),    HISENSE, https://companiesmarketcap.com/hisense-visual-technology/revenue/ (last visited July 24, 2025).

its publisher and advertiser partners in finding and connecting with a high-value audience through targeted and interactive ads across its platform," emphasizing that "[w]ith millions of active devices worldwide and significant growth momentum, VIDAA serves as the ultimate success partner for factories, brands, content providers, and advertisers in the Smart TV industry."[43] That same website also explains that "depending on commercial terms," VIDAA Int'l can provide different "placement opportunities" on VIDAA televisions.[44]

## **HISENSE'S KNOWLEDGE OF TOUCHSTREAM'S PATENTS**

51.    Since at least December 14, 2011, Touchstream has publicized that its revolutionary product offerings were "patent-pending."[45]

52.    In 2011 and 2012, Touchstream attended various trade shows at which it presented its technology to develop business opportunities. At these trade shows, it was Touchstream's practice to inform those to whom it presented that its technology was patent pending. In January 2012, Touchstream had a booth at the Consumer Electronics Show ("CES") in Las Vegas, Nevada.

---

[43] Content Partners, VIDAA, https://www.vidaa.com/partners/ (last visited July 24, 2025).
[44] *Id.*
[45] *See e.g.*, Sean Ludwig, *Shodogg Will Let You Pause and Restart Video From Any Device (Exclusive)*, VENTUREBEAT (Dec. 14, 2011, 7:00 AM), https://venturebeat.com/2011/12/14/shodogg-video-sharing-phones-tvs-exclusive/; Shodogg, *Shodogg Launches at CES and Transforms Streaming Video Delivery by Fueling Industry Expansion with Content Providers*, Cision PR Newswire (Jan. 10, 2012, 9:43 ET), https://www.prnewswire.com/news-releases/shodogg-launches-at-ces-and-transforms-streaming-video-delivery-by-fueling-industry-expansion-with-content-providers-137010098.html; *see also* https://web.archive.org/web/20111003131546/http://shodogg.com/ (archived snapshot of Shodogg website from Oct. 3, 2011) ("Shodogg is a patent-pending technology that allows viewers to access online streaming content from any smartphone and display it to any larger connected screen, such as a laptop, tablet, or TV.").

53.     Upon information and belief, Hisense frequently attended and still attends similar trade shows, including CES. In January 2012, Hisense also attended CES in Las Vegas, Nevada, where Touchstream presented from its booth.[46]

54.     Just days after the first Touchstream Patent issued on January 15, 2013, Touchstream issued a press release announcing this patent award.[47]

55.     At CES in 2014, Hisense debuted its VIDAA Smart TVs.[48]

56.     It was pattern and practice for Touchstream to inform potential business partners of its patents and patent applications, as well as the fact that its technology was protected by those patents and patent applications. Touchstream has also been involved in significant, widely public litigation regarding infringement of its patents:

57.     **Vizbee, Inc.**[49]  In 2017, Touchstream sued Vizbee in the Southern District of New York, asserting patents that claim priority back to the same patent application at issue in this case and, like the patents asserted here, claim priority to Mr. Strober's original prototype work in October 2010. Vizbee and Touchstream litigated for more than two years and resolved the dispute in early 2020.

---

[46] *See* "Hisense I'TV2 Receives the 'Value Innovation Award' at CES," PR Newswire (Jan. 11, 2012, 08:00 ET), https://www.prnewswire.com/news-releases/hisense-itv2-receives-the-value-innovation-award-at-ces-137083158.html (receiving an award at CES in January 2012).

[47] Shodogg, *Shodogg Announces the Release of ScreenDirect a Business-to-Business Solution Enabling Companies to Seamlessly Direct Digital Content Across Screens*, CISION PR NEWSWIRE (Jan. 17, 2013, 9:15 ET) https://www.prnewswire.com/news-releases/shodogg-announces-the-release-of-screendirect-a-business-to-business-solution-enabling-companies-to-seamlessly-direct-digital-content-across-screens-187284641.html; *see also, e.g.*, *Meet Shodogg Who Won this Year's Techweek NYC Launch Competition*, ALLEYWATCH (Dec. 2014), https://www.alleywatch.com/2014/12/meet-shodogg-who-won-this-years-techweek-nyc-launch-competition/.

[48]     *See* Nelson, Christopher, "Vidaa Las Vegas," EXHIBITOR, https://www.exhibitoronline.com/topics/article.asp?ID=1878#:~:text=To%20launch%20its%20new%20Vidaa%20series%20of,the%20Jabbawockeez%2C%20a%20group%20of%20hip%2Dhop%20dancers.

[49] *Touchstream Technologies, Inc v. Vizbee, Inc*., No. 17-cv-06247-PGG-KNF (S.D.N.Y.).

58.  **Google, LLC**.[50]  In 2021, Touchstream sued Google in the Western District of Texas, asserting patents that claim priority back to the same patent application at issue in this case and, like the patents asserted here, claim priority to Mr. Strober's original prototype work in October 2010. The Court rejected at summary judgment Google's defense that Touchstream's patents are invalid under 35 U.S.C. § 101, and granted Touchstream's motion for summary judgment finding the Touchstream patents valid under Section 101. Furthermore, Google's six petitions for *inter partes* review were each rejected by the Patent and Trademark Office on final written decisions.  At trial, the jury awarded Touchstream approximately $339 million in damages.

59.  **Cable Companies**.[51]  In 2023, Touchstream sued several of the largest cable companies in the United States in this Court. Touchstream's claims against Comcast were tried to a jury in March 2024, settling just prior to closing arguments. The '934 Patent asserted in this complaint was also asserted in each of these cases. Furthermore, Comcast filed two IPR petitions challenging the validity of every claim in the '934 Patent, but the PTAB denied institution of both petitions. *See* IPR2024-00325 and IPR2024-00326. The EDTX Court also rejected at summary judgment Comcast's defenses that Touchstream's patents (including the '934 Patent) are invalid under 35 U.S.C. § 101, and granted Touchstream's motion for summary judgment finding Touchstream's patents (including the '934 Patent) valid under Section 101.

60.  **VIZIO, Inc**.[52] In 2024, Touchstream sued VIZIO, Inc. in the Central District of California, asserting both the '118 and '938 patents at issue in this complaint. This lawsuit has

---

[50] *Touchstream Technologies, Inc. v. Google LLC*, No. 6:21-cv-00569-ADA (W.D. Tex.).
[51] *Touchstream Technologies, Inc. v. Charter Communications, Inc. et al.*, No. 2:23-cv-00059-JRG (E.D. Tex.).
[52] *Touchstream Technologies, Inc. v. VIZIO, Inc.*, No. 8:24-cv-02328-FWS-KES (C.D. Cal. 2024).

been widely reported on, including by Bloomberg.[53] The parties settled the lawsuit in December 2024.

61.    **Yamaha Corporation.**[54] In 2024, Touchstream sued Yamaha Corporation in the Eastern District of Texas, asserting the '118 patent at issue in this complaint. This lawsuit has been widely reported on. The case remains pending.

62.    These litigations—and particularly Touchstream's verdict against Google—received significant press coverage.[55] Hisense was either aware of these litigations or willfully blind to them, and Hisense never approached Touchstream about a license during the pendency of any of these litigations.

63.    Prior to initiating this litigation, on September 16, 2024, Touchstream sent a letter to individuals within the Hisense's corporate family, including at least Hisense USA and Defendant Hisense Int'l through David Gold, about its technology and patent portfolio to explore the possibility of doing business with Hisense. For example, the letter stated: "Touchstream has won numerous industry awards for its inventions, and owns intellectual property rights resulting from its years of research and development—including 12 issued patents and 5 pending applications. I have attached a list of Touchstream's issued patents and pending patent applications

---

[53] *See* Lauren Castle, *Touchstream Hits Vizio With Patent Suit Over Casting Products*, BLOOMBERG LAW (Oct. 28, 2024, 11:16 AM CT), https://news.bloomberglaw.com/ip-law/touchstream-hits-vizio-with-patent-suit-over-casting-products.

[54] *Touchstream Technologies, Inc. v. Yamaha Corp.*, No. 2:24-cv-00739-JRG (E.D. Tex. 2024).

[55] *See, e.g.,* Blake Brittain, *Google Owes $338.7 Million in Chromecast Patent Case, US Jury Says*, REUTERS (July 24, 2023, 3:59 PM CT), https://www.reuters.com/legal/google-owes-3387-mln-chromecast-patent-case-us-jury-says-2023-07-24/#:~:text=July%2024%20(Reuters)%20%2D%20Alphabet%27s,Waco%2C%20Texas%20decided%20on%20Friday; Ryan Davis, *Google Told to Pay $339M In WDTX Chromecast Patent Trial*, LAW360 (July 21, 2023, 7:29 PM ET), https://www.law360.com/articles/1702367/google-told-to-pay-339m-in-wdtx-chromecast-patent-trial.

for your review." On information and belief, the employees and agents of Hisense USA and/or Hisense Int'l contacted by Touchstream freely share information with Defendants.

64.     Despite knowing of the Touchstream Patents, Hisense has intentionally disregarded Touchstream's intellectual property rights and willfully infringed the Touchstream Patents.

65.     At no point did Hisense reach out to Touchstream about potentially acquiring a license to Touchstream's pending or awarded patents, and to this day Hisense has not requested or received a license to any of the Touchstream Patents.

66.     Accordingly, on information and belief, Hisense knew of Touchstream's patented technology and the Touchstream Patents, knew that its products were infringing, and continues to sell, offer for sale, and/or use the accused RemoteNOW and VIDAA services such that Hisense is willfully infringing the Touchstream Patents.

67.     The facts discussed above support an inference of conscious copying by Hisense of Touchstream's technology, which Hisense knew or should have known was patented such that copying would amount to patent infringement. The similarity of Hisense's technology to that presented by Touchstream evidences copying with the knowledge that this would lead to infringement.

68.     Further, Hisense has not ceased its infringing behavior. To date, Hisense is still selling, offering for sale, and/or using the accused RemoteNOW and VIDAA services such that Hisense is willfully infringing the Touchstream Patents.

69.     All of these facts taken together constitute willful infringement by Hisense, with actual or imputed knowledge of Touchstream's patents, or at the very least willful blindness to the knowledge of those patents.

70.     To the extent Hisense does not directly infringe the Touchstream Patents, it has induced infringement by its United States subsidiaries from at least the date of Touchstream's letter to Hisense, but more likely earlier due to Hisense's likely knowledge of prior lawsuits where one or more of the Touchstream Patents were at issue, the various correspondence between the companies about the Touchstream Patents, and the similarity between Hisense's accused technology and the inventions disclosed in the Touchstream Patents. Since at least the period previously discussed, Hisense has induced its agents in the United States to perform the accused services in the way claimed in the Touchstream Patents for the unique benefits provided by those valuable inventions, as described above.

### COUNT I: INFRINGEMENT OF THE '118 PATENT

71.     Touchstream adopts and incorporates by reference the allegations set forth in ¶¶ 1–70, *supra*.

72.     Hisense directly infringes, either individually or jointly through acts of its controlled agent subsidiaries or third-parties, at least claim 8 of the '118 Patent by performing the methods described in ¶ 28, *supra*.

73.     For example, Hisense (alone or in combination with its controlled agent subsidiaries and/or third-party vendors) performs the computer-implemented method for remotely presenting various types of content. *See, e.g.*, ¶¶ 38-48, *supra*. Hisense further receives, by a personal computing device, a unique identifier of a content presentation system. *See, e.g.*, *id.*. Hisense further generates, by the personal computing device, a set of messages that includes a first command in a first format, a reference to a piece of content associated with a particular media playing application, an identifier that corresponds to the particular media playing application, and the unique identifier. *See, e.g.*, *id.*. Hisense further communicates, by the personal computing device, the generated set of messages to a server system configured to send, to the content

presentation system based on the unique identifier, a second command in a second format, the second command being converted from the set of messages based on each of the first command and a configuration of the particular media playing application, wherein the second format is associated with the particular media playing application and the second command corresponds to the first command. *See, e.g.*, *id.*. Hisense further causes, by the personal computing device, the content presentation system to utilize the second command and the particular media playing application to control the referenced piece of content. *See, e.g.*, *id.*.

74. Alternatively, or in addition to its direct infringement, Hisense actively encourages its subsidiaries, vendors, and/or customers to infringe through the manner described above. Despite knowing of the Touchstream Patents, Hisense has and continues to actively induce its subsidiaries, vendors, and/or customers to perform the steps of at least claim 8 of the '118 Patent. Hisense encourages this infringement with a specific intent to cause its subsidiaries, vendors, and/or customers to infringe. Hisense's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

75. Hisense's infringement of the '118 Patent has been, is, and continues to be willful, including Hisense's infringement of at least claim 8 as described at ¶¶ 28, 38-50, *supra*.

76. Touchstream has been and will continue to be irreparably harmed by Hisense's infringing acts, requiring the entry of a permanent injunction to prevent Hisense's further infringement of the '118 Patent because Touchstream does not have another adequate remedy at law.

### COUNT II: INFRINGEMENT OF THE '938 PATENT

77. Touchstream adopts and incorporates by reference the allegations set forth in ¶¶ 1–76, *supra*.

78.    Hisense directly infringes, either individually or jointly through acts of its controlled agent subsidiaries or third-parties, at least claim 14 of the '938 Patent by performing the methods described in ¶ 29, *supra*.

79.    For example, Hisense (alone or in combination with its controlled agent subsidiaries and/or third-party vendors) performs the computer-implemented method for remotely presenting various types of content. *See, e.g.*, ¶¶ 38-48, *supra*. Hisense further receives, from a computing device, a request for video content metadata from the video content provider, where the metadata includes parameters, such as at least an account or a user identification. *See, e.g.*, *id*. Hisense further identifies video content metadata satisfying the parameters based on the request. *See, e.g.*, *id*. Hisense further provides, to the computing device, the video content metadata satisfying the parameters. *See, e.g.*, *id*. Hisense further receives a video content selection and a video display selection corresponding to a selected remote display. *See, e.g.*, *id*. Hisense further generates, based on the video content selection and the video display selection, a first command causing the selected remote display to load the second media player. *See, e.g.*, *id*. Hisense further generates, based on the video content selection, a second command causing the second media player to present the selected video content on the selected remote display controlled by the computing device. *See, e.g.*, *id*. Hisense further transmits the first command to cause the selected remote display to load the second media player and the second command to cause the loaded second media player to present the selected video content on the selected remote display under the control of the computing device. *See, e.g.*, *id*. Hisense further communicates control commands from the computing device to the selected remote display device via a video content provider server system. *See, e.g.*, *id*.

80.     Alternatively, or in addition to its direct infringement, Hisense actively encourages its subsidiaries, vendors, and/or customers to infringe through the manner described above. Despite knowing of the Touchstream Patents, Hisense has and continues to actively induce its subsidiaries, vendors, and/or customers to perform the steps of at least claim 14 of the '938 Patent. Hisense encourages this infringement with a specific intent to cause its subsidiaries, vendors, and/or customers to infringe. Hisense's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

81.     Hisense's infringement of the '938 Patent has been, is, and continues to be willful, including Hisense's infringement of at least claim 14 as described at ¶¶ 29, 38-50, *supra*.

82.     Touchstream has been and will continue to be irreparably harmed by Hisense's infringing acts, requiring the entry of a permanent injunction to prevent Hisense's further infringement of the '938 Patent because Touchstream does not have another adequate remedy at law.

## <u>COUNT III: INFRINGEMENT OF THE '934 PATENT</u>

83.     Touchstream adopts and incorporates by reference the allegations set forth in ¶¶ 1–82, *supra*.

84.     Hisense directly infringes, either individually or jointly through acts of its controlled agent subsidiaries or third-parties, at least claim 17 of the '934 Patent by performing the methods described in ¶ 30, *supra*.

85.     For example, Hisense (alone or in combination with its controlled agent subsidiaries and/or third-party vendors) performs the computer-implemented method for controlling various types of content. *See, e.g.*, ¶¶ 38-48, *supra*. Hisense further provides, by a media receiver, a unique identifier of the media receiver to a computing device in communication with a server system. *See, e.g.*, *id*. Hisense further receives, by the media receiver via the server

system and based on the provided unique identifier, a set of messages from the computing device, the received set of messages referencing a piece of content associated with a first type of media playing application of a plurality of media playing application types, and including a set of commands converted from a universal format defined by the computing device to a first format that corresponds to the first type of media playing application. *See, e.g.*, *id*. Hisense further selects, by the media receiver, and in response to receiving the set of messages, the first type of media playing application from the plurality of media playing application types based at least in part on its association with the piece of content referenced in the received set of messages. *See, e.g.*, *id*. Hisense further controls, by the media receiver, how the selected first type of media playing application plays the referenced piece of content based on at least one command of the converted set of commands included in the received set of messages. *See, e.g.*, *id* .

86.    Alternatively, or in addition to its direct infringement, Hisense actively encourages its subsidiaries, vendors, and/or customers to infringe through the manner described above. Despite knowing of the Touchstream Patents, Hisense has and continues to actively induce its subsidiaries, vendors, and/or customers to perform the steps of at least claim 17 of the '934 Patent. Hisense encourages this infringement with a specific intent to cause its subsidiaries, vendors, and/or customers to infringe. Hisense's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

87.    Hisense's infringement of the '934 Patent has been, is, and continues to be willful, including Hisense's infringement of at least claim 17 as described at ¶¶ 30, 38-50, *supra*.

88.    Touchstream has been and will continue to be irreparably harmed by Hisense's infringing acts, requiring the entry of a permanent injunction to prevent Hisense's further

infringement of the '934 Patent because Touchstream does not have another adequate remedy at law.

## JURY DEMAND

89.     Touchstream demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Touchstream requests entry of a judgment in its favor and against Hisense as follows:

a)      Judgment that Hisense has directly infringed one or more claims of the Touchstream Patents;

b)      An award of damages to compensate for Hisense's infringement, including damages pursuant to 35 U.S.C. § 284, as well as prejudgment and post-judgment interest;

c)      An award of costs and expenses in this action, including an award of Touchstream's reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

d)      A permanent injunction restraining and enjoining Hisense, and its respective officers, agents, servants, employees, attorneys, and those persons or entities in active concert or participation with Hisense who receive actual notice of the order by personal service or otherwise, from any further sales or use of their infringing products and/or services and any other infringement of the Touchstream Patents;

e)      A finding that Hisense has willfully infringed and is willfully infringing one or more claims of the Touchstream Patents;

f)      A finding that this case is an exceptional case, and awarding treble damages due to Hisense's deliberate and willful conduct, and ordering Hisense to pay Touchstream's costs of suit and attorneys' fees; and

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 40

g)    For such other and further relief as the Court may deem just, proper, and equitable
under the circumstances.


Dated: August 1, 2025                          Respectfully Submitted,

                                               */s/ Ryan D. Dykal*
                                               Ryan D. Dykal (MO State Bar No. 60905)

                                               Jordan T. Bergsten (*pro hac vice* forthcoming)
                                               Mark D. Schafer (*pro hac vice* forthcoming)
                                               Anita Liu (TX State Bar No. 24134054)
                                               Philip A. Eckert (*pro hac vice* forthcoming)
                                               **BOIES SCHILLER FLEXNER LLP**
                                               1401 New York Ave, NW
                                               Washington, DC 20005
                                               (t) 202-274-1109
                                               rdykal@bsfllp.com
                                               jbergsten@bsfllp.com
                                               mschafer@bsfllp.com
                                               aliu@bsfllp.com
                                               peckert@bsfllp.com

                                               ***Counsel for Plaintiff***
                                               ***Touchstream Technologies, Inc.***